UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-14515-CIV-RLR

JUAN CASTRO and JOSE DIAZ,

    Plaintiffs,

v.

THEERATAT & PREEDA CORPORATION, a
Florida for Profit Corporation and AMPAI
SONGBANDIT, individual Defendant,

    Defendants.
_____/

**JOINT MOTION FOR COURT APPROVAL OF SETTLEMENT
AND DISMISSAL WITH PREJUDICE**

Juan Castro and Jose Diaz ("Plaintiffs") and Defendants Theeratat & Preeda Corporation and Ampai Songbandit ("Defendants") (collectively referred to as the "Parties"), hereby file their Joint Motion for Court Approval of Settlement and Dismissal with Prejudice, and respectfully request that the Court approve the parties' settlement and dismiss the case, with prejudice. The parties state the following in support.

**I.    THE SETTLEMENT IS A REASONABLE RESOLUTION OF THE PARTIES' BONA FIDE DISPUTE.**

There are contested issues of liability in this case. The parties agree that the settlement terms and amounts are a reasonable compromise of disputed issues in this case, including whether Plaintiffs and whether Defendants were subject to the FLSA; Plaintiffs true regular rate of pay for minimum wage purposes; the number of overtime hours Plaintiff worked without proper pay, if any; whether a two or three-year statute of limitations applies to Plaintiff's claims; and whether liquidated damages are warranted here.

1

The Plaintiffs worked for a Thai-themed restaurant in Vero Beach, who were paid in cash. The Defendants have records of the cash payments made to the Plaintiffs, and the Plaintiffs scheduled hours. The main contested issue resolves largely around the manner in which the Plaintiffs were paid (though enterprise coverage is an issue). The Plaintiffs allege that they were paid a day rate, but were not compensated for any overtime hours and certain regular hours at minimum wage. The Defendants maintain that the while the pay was referred to as a day rate, the day rate consisted of the minimum wage and time and one-half the minimum wage for any overtime hours worked, and that the Defendants' records demonstrate this. The two sides understand that to litigate this issue would cost far in excess of the settlement, and thus financially harm the Defendants, while potentially compromising any relief on the part of the Plaintiffs, or, if they do prevail, significant delay in payment and possibly a collection problem. While the settlement agreement is not a complete recovery of all wages the Plaintiffs claimed to be owed, the parties believe that this settlement is fair and reasonable given the disputed issues and the risks, time requirements, and unknown case duration inherent to litigation.

The settlement does contain a confidentiality provision. *See Settlement Agreement* ¶ 15, attached hereto as Exhibit "A." The parties agree that it is reasonable in light of the nature of the business.

In determining whether the settlement is a fair and reasonable resolution, the Court evaluates: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See Leverso v. SouthTrust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). When considering these factors, the Court

should keep in mind the "strong presumption" in favor of finding a settlement fair. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Moreover, a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (citing *Cotton*, 559 F.2d at 1330). The parties submit that the settlement is a reasonable resolution of a *bona fide* dispute in light of the *Leverso* factors.

First, there is no fraud or collusion behind the settlement. The settlement was reached via extensive and rigorous arms' length negotiation by experienced labor and employment counsel, early in the case and that the negotiations carried on for some time, including two months before suit was filed in response to a demand letter sent by the Plaintiffs. The case was due to be mediated next week. Counsel in this case have never had another case together and do not know one another absent their work on this case.

Second, while the legal issues in the case are not all that complex (how the compensation that the Plaintiffs were given breaks down into straight time and overtime or whether overtime was not paid, as contended by the Plaintiffs), the factual disputes regarding the compensation, mathematical calculations and possible disputes over hours worked, and the applicability of liquidated damages were and are vigorously contested. The resolution of these hotly disputed factual issues has caused, and will continue to cause, the parties to incur significant expense.

Third, while the settlement was reached after only minimal discovery was conducted, it was reached after the parties were fully informed of the strengths and weaknesses of their respective positions.

Fourth, Plaintiffs' probability of success on the merits was vigorously contested between the parties, as it relates to hours worked and the breakdown of the pay that was provided.

However, both parties recognized that the cost of litigating the case was far disproportionate to any eventual recovery by Plaintiffs (which recovery was far from certain), making a negotiated resolution the appropriate means to resolve the matter. For example, if the case were tried and appeal(s) taken from that trial, tens of thousands of dollars would have been expended in fees and costs alone.

Fifth, as set forth above, the range of possible recovery for Plaintiffs was as low as $0, if Defendants prevailed. Given the disputed issues and risks, the settlement amount payable to Plaintiffs represents a significant recovery of their alleged damages.

Sixth, and finally, it is the opinion of the parties' counsel that this settlement represents a fair and reasonable resolution to the parties' *bona fide* dispute over Plaintiffs' claims, the amount of damages that were recoverable, and the applicability, *vel non*, of liquidated damages.

## II. THE ATTORNEYS' FEES AND COSTS ARE REASONABLE.

Defendants have agreed to pay Plaintiffs' attorney's fees and costs. Of the $12,000 total settlement amount, $3,200 is allocated to Plaintiffs' counsel for fees and costs. The costs were approximately $520.00, and thus the remainder represents attorneys' fees. The fees and costs bear no relation to the amounts received by Plaintiffs, and were negotiated separately. The retainer agreement between Plaintiffs and his counsel allow for the Court to approve and/or determine a reasonable fee in a settlement or if the case is tried to verdict and Plaintiffs are the prevailing party. Here, the Court is in the capacity of approving a settlement and the portions both to Plaintiffs and their counsel.

Lead counsel for Plaintiffs, Aaron Hines, has been a lawyer since 2010, has considerable experience, and has significantly reduced his fee in order to get the case settled. The attorney's fees were calculated on an hourly basis at $250.00 per hour and are reasonable for the latter reasons. The non-attorney hours were calculated on an hourly basis of $105.00 per hour. *See*

-4-

Counsel Time Records attached as Exhibit "B." Plaintiffs are pleased with the settlement and desire for the Court to approve it.

## III. CONCLUSION

The parties therefore respectfully submit that the settlement should be approved by the Court consistent with applicable precedent, including *Lynn's Food*, 679 F.2d at 1353. If the Court requires any additional information to determine the reasonableness of the parties' settlement, the parties respectfully request that the Court convene a fairness hearing, at which time the parties will provide any further information needed for the Court to determine whether the *Leverso* factors have been satisfied.

WHEREFORE, the Parties respectfully request that the Court enter an Order finding the settlement fair and reasonable, dismissing the case with prejudice, and granting such other and further relief as is appropriate.

Dated this 1st day of February, 2017.

Respectfully submitted,

| | |
|---|---|
| **MORGAN & MORGAN, PA** <br> P.O. Box 4979 <br> Orlando, FL 32802 <br> Telephone: 407.428.6241 <br> Facsimile: 407.245.3342 <br><br> By: */s/ Aaron Hines* <br> Aaron Hines <br> Florida Bar No. 081690 <br> E-mail:ahines@forthepeople.com <br><br> *Attorney for Plaintiffs* | **GLASSER & KLEPPIN, PA** <br> 8751 W. Broward Blvd., Suite 105 <br> Plantation, FL 33324 <br> Telephone: 954.424.1933 <br> Facsimile: 954.474.7405 <br><br> By: */s/ Chris Kleppin* <br> Chris Kleppin <br> Florida Bar No. 625485 <br> E-mail:ckleppin@gkemployment.com <br><br> *Attorney for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Chris Kleppin*
Chris Kleppin

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

1. **The Parties.** For and in consideration of the promises and covenants contained in this Settlement Agreement and General Release ("Agreement"), the parties, Plaintiffs Juan Castro and Jose Diaz, for themselves and their heirs, representatives, executors, administrators, successors and assigns (collectively referred to throughout this Agreement as "Plaintiffs"), and Defendants Theeratat & Preeda Corporation and Ampai Songbandit, and their respective officers, directors, agents, employees, affiliates, related entities, including any corporation in which Songbandit holds an interest, insurers, successors, and assigns, as applicable (collectively referred to throughout this Agreement as "Defendants"), covenant and agree that:

2. **Compromise Settlement.** This Agreement is entered into freely and voluntarily by the parties solely to avoid further costs, risks and hazards of litigation and to settle all claims and potential claims and disputes, known or unknown, in a final and binding manner, as set forth below.

3. **No Admissions.** This Agreement does not constitute an admission of liability on the part of Defendants who specifically deny violation of any law, rule, regulation, contractual right or any other duty or obligation with respect to Plaintiffs' employment with Defendants or any other milieu.

4. **Consideration.** In consideration for signing this Agreement and General Release and compliance with the promises made herein, Defendants agree to pay to Plaintiffs and their counsel the total sum of Twelve Thousand Dollars ($12,000.00), in full and final settlement and resolution of all claims made by Plaintiffs.

Within thirty (30) days of the acceptance of this Agreement by the Court, $12,000.00 of the settlement proceeds shall be paid to Plaintiffs and their counsel, c/o Aaron Hines, Esq., 20 N. Orange Avenue, Suite 1400, Orlando, Florida 32801, and, allocated as follows:

   a. One check made payable to the order of Juan Castro in the amount of $5,650.00 (five thousand six hundred and fifty dollars) in consideration of all wage and hour claims made by Plaintiffs, including but not limited to overtime and liquidated damages.

   b. One check made payable to the order of Jose Diaz in the amount of $3,150.00 (three thousand one hundred and fifty dollars) in consideration of all wage and hour claims made by Plaintiffs, including but not limited to overtime and liquidated damages.

   c. One check made payable to the order of Morgan & Morgan, P.A. in the amount of $3,200.00 (three thousand and two hundred dollars) in consideration of all claims made by Plaintiffs and in this case, including but not limited to attorneys' fees, costs, and disbursements.

Should Defendants default on any of the above payments (after a 5-day grace period in which Plaintiff shall provide written notice to Defendants' counsel of any issue with payment or lack thereof) or should any of the checks be deemed "NSF", Plaintiffs shall be entitled to a judgment (in the amount of any check not paid or that is returned NSF) for any check plus reasonable attorneys' fees and costs in securing same. Plaintiffs shall allow counsel for Defendants to file a Joint Motion for Court Approval of Settlement Agreement, executed by counsel for Defendants, as more fully set forth in Paragraph 9 below. A fully executed copy of

2

the Join Motion, shall be provided to Counsel for Plaintiffs when they are filed with the Court. Any tax liability for any funds distributed with respect to this Agreement shall be the sole responsibility of the Plaintiffs.

5. **No Consideration Absent Execution of this Agreement**. Plaintiffs understand and agree that they would not receive the monies and/or benefits specified in Paragraph 4 above, except for their execution of this Agreement and the fulfillment of the promises contained herein.

6. **General and Complete Release** . Except for the obligations required by this Agreement, Plaintiffs do hereby release, acquit and forever discharge Defendants of and from any and all actions, causes of action, obligations, costs, expenses, attorneys' fees, damages, losses, claims, liabilities, suits, debts, demands and benefits of whatever character in law, or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind or nature, whatsoever, now existing or arising in the future based on any act or omission, event, occurrence, or non-occurrence, from the beginning of time to the date of execution of this Agreement, including but not limited to, any claims or causes of action arising out of or in any way relating to Plaintiffs' employment with Defendants, including but not limited to any alleged violation of:

- the Florida Public Employees Relations Act, as amended;
- Title VII of the Civil Rights Act of 1964, as amended;
- Sections 1981 through 1988 of Title 42 of the United States Code, as amended;
- The Employee Retirement Income Security Act of 1974, as amended;
- The Immigration Reform and Control Act, as amended;
- The Americans with Disabilities Act of 1990, as amended;

3

- The Age Discrimination in Employment Act of 1967, as amended;

- The Fair Labor Standards Act, as amended;

- The Occupational Safety and Health Act, as amended;

- The Family and Medical Leave Act, as amended;

- The Florida Civil Rights Act, as amended;

- *Florida Statutes* § 440.205 (anti-retaliation provision)

- Any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance;

- Any public policy, contract, tort, or common law; and

- Any allegation for costs, fees, or other expenses including attorneys' fees incurred in these matters.

In consideration of the valuable consideration provided for in this Agreement, Plaintiffs intend to give up any rights they might have under these or any other laws with respect to their employment with Defendants. Carved out of this release is any claim for injury resulting from an accident (act of negligence) in the workplace that may potentially be brought under the Workers' Compensation Act, though neither Plaintiff as of the signing of this Agreement has made or intends to make any claim under the Workers' Compensation Act.

In exchange for the consideration in this Agreement, Defendants release Plaintiffs from any and all claims, charges, actions and causes of action of any kind or nature that Defendants once had or now have, arising out of the services Plaintiffs performed for Defendants, and whether such claims are now known or unknown to Defendants from the beginning of the world to the date of the present.

7. **Release of Unknown Claims.** For the purpose of implementing a full and complete Release, Plaintiffs expressly acknowledge that the Release they give in this Agreement

4

is intended to include in its effect, without limitation, claims that they did not know or suspect to exist in their favor at the time of the effective date of this Agreement, regardless of whether the knowledge of such claims or the facts upon which they might be based would materially have affected the settlement of this matter and that the consideration given under this Agreement is also for the release of those claims and contemplates the extinguishment of any unknown claims.

8. **No Other Claims Exist**. Other than the Federal Court Action, as defined in paragraph 9 below, Plaintiffs confirm that they have not filed, caused to be filed, and are not a party to any claim, charge, complaint, or action against Defendants in any forum. In the event that any such claim, charge, complaint or action is filed, relating to matters which existed on or before the date of this Agreement, except for enforcement of this Agreement, Plaintiffs shall not be entitled to recover any relief or recovery therefrom, including costs and attorney's fees.

9. **Court Approval and Dismissal with Prejudice of Pending Lawsuit**. In or about November 2016, a lawsuit was filed styled Juan Castro and Jose Diaz, Plaintiffs, v. Theeratat and Preeda Corporation and Ampai Songbandit, Defendants, Case No. 16-14515-CIV-RLR, in the United States District Court for the Southern District of Florida ("the Federal Court Action"), by Plaintiffs. This Agreement is subject to Court approval, and upon such approval, the Federal Court Action shall be dismissed with prejudice by means of a Joint Motion for Court Approval of Settlement Agreement signed by counsel for the parties, and disbursement of the funds shall be made as stated herein thirty (30) days after Court Approval. If the Court requires filing in the CM/ECF system, then the Agreement will be so filed.

10. **No Disparaging Comments**. Plaintiffs covenant and agree that they shall not engage in any pattern of conduct that involves the making or publishing of written or oral

5

statements or remarks, (including, without limitation, the repetition or distribution of derogatory rumors, allegations, negative reports or comments) which are disparaging, deleterious or damaging to the integrity, reputation or good will of Defendants. Plaintiffs agree never to apply for employment with the Defendants in the future, and will bring no cause of action if they mistakenly apply, and believe that they are not hired unjustly.

Defendants covenant and agree that they shall not engage in any pattern of conduct that involves the making or publishing of written or oral statements or remarks, (including, without limitation, the repetition or distribution of derogatory rumors, allegations, negative reports or comments) which are disparaging, deleterious or damaging to the integrity, reputation or good will of Plaintiffs.

11. **References**. Plaintiffs agree to direct all reference inquiries regarding their employment with Defendants to <u>Ampai Songbandit.</u> Upon request, Defendants agree that <u>Ampai Songbandit</u>, or his designee, will only confirm the dates they provided services and type of work performed by Plaintiffs, and will not disclose any other information unless requested in writing by Plaintiffs, or unless compelled by law to do so.

12. **Successors**. This Agreement shall be binding upon and shall inure to the benefit of Plaintiffs, and shall be binding upon and shall inure to the benefit of Defendants, and their respective heirs, administrators, successors and assigns, as applicable.

13. **Validity of Agreement**. Should any provision in this Agreement be declared to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected

thereby, and the illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement, and all remaining provisions shall remain valid and enforceable.

14. **Voluntary Agreement.** The parties understand and agree that they:

    (a) have had a reasonable time within which to consider this Agreement before executing it;

    (b) have carefully read and fully understand all of the provisions of this Agreement;

    (c) have agreed, through this Agreement, that Plaintiffs are releasing Defendants from any and all claims they may have against them;

    (d) knowingly and voluntarily agree to all of the terms set forth in this Agreement;

    (e) knowingly and voluntarily intend to be legally bound by same;

    (f) were advised to consider the terms of this Agreement with counsel, and have consulted with their counsel prior to executing this Agreement, and

    (g) are duly authorized and have full authority to execute this Agreement.

15. **Confidentiality.** The Plaintiffs agree that they will not disclose the terms of this Agreement to anyone other than their counsel, their accountant/tax advisor and IRS, or as compelled by a court of competent jurisdiction. The Plaintiffs further agree to have no further communication in any way relating to this settlement with any person, except those who may be informed as set forth in the below paragraph, provided that each person so informed (except for the IRS) is told that he or she is not to disclose the matter further. To all others, including but not limited to Plaintiffs' spouses (if any), any employee or former employee of Defendants, the press or any other inquiry whatsoever, the Plaintiffs may say only that "the matter is resolved and I cannot talk about it", or words to that effect. If Plaintiffs breach this provision, they have to pay

any monies paid under this Agreement back to the Defendants. If the Court requires that the Agreement be filed in the CM/ECF system or otherwise be made public, that publication does not constitute a breach of this provision.

16. **No Additional Representations.** Each party acknowledges that except as expressly set forth herein, no representations of any kind or character have been made by any other party or parties, agents, representatives, or attorneys, to induce the execution of this Agreement.

17. **Amendment or Modification.** This Agreement cannot be modified, altered or changed except by a writing signed by the parties wherein specific reference is made to this Agreement.

18. **Affirmations.** Plaintiffs further affirm that they have been paid and/or have received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which they may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions and/or benefits are due to him, except as provided in this Agreement.

19. **Entire Agreement.** This Agreement constitutes a single integrated contract expressing the entire agreement of the parties hereto. There is no other agreement or understanding, written or oral, expressed or implied, among the parties hereto concerning the subject matter hereof, except as set forth in this Agreement.

20. **Severability.** In the event that an individual provision of this Settlement Agreement and Release is found to be legally unenforceable, such provision shall be severed from the contract, leaving the remainder intact and binding on all parties.

21. **Captions.** The captions and headings used in this Agreement are for convenience and means of reference only, and shall not be used to construe, interpret, expand or limit the terms of this Agreement.

22. **Counterparts.** The parties agree that this Agreement may be executed by the parties in multiple parts, or in counterparts, each of which shall be considered an original.

23. **Construction.** Language of all parts of this Agreement shall be construed as a whole according to its fair meaning. The parties agree that this Agreement is the product of joint authorship, and in the event of any ambiguity, the Agreement shall not be construed against any party.

24. **Copy of Agreement Valid.** The parties agree that executed copies of this Agreement shall be valid and binding, in the event the original executed Agreements are missing.

25. **Attorneys' Fees.** In the event that any party brings an action to enforce this Agreement, the prevailing party, after all appeals or the time for appeal has expired, shall be entitled to reasonable attorneys' fees.

26. **Governing Law and Interpretation.** This Agreement shall be governed and interpreted in accordance with applicable federal laws and applicable laws of the State of Florida, without regard to its conflict of laws provision.

IN WITNESS WHEREOF, the parties hereto have knowingly and voluntarily executed this Agreement as of the date set forth below.

|                                    | THEERATAT & PREEDA CORPORATION |
| ---------------------------------- | ------------------------------ |
| _____<br>JUAN CASTRO<br><br>Date:_____ | By: _____<br><br>Title: PRESIDENT |
| _____<br>JOSE DIAZ<br><br>Date:_____ | AMPAI SONGBANDIT<br><br>_____ |

_____  
JUAN CASTRO  
Date: 01-25-2017

_____  
JOSE DIAZ  
Date: 25/01/2017

THEERATAT & PREEDA
CORPORATION

By:_____

Title:_____


AMPAI SONGBANDIT

_____

Settlement Agreement - Plaintiffs 01-19-17

10

## Morgan & Morgan, P.A.
Case Expense Report
(3124801) Castro, Juan vs. Sake Japanese and Thai Restaurant
For Transactions Dated Through: 2/2/2017

| Case Number | Style | Description | Amount |
|---|---|---|---|
| 3124801 | **Castro, Juan vs. Sake Japanese and Thai Restaurant** | | |
| | | Filing fees | $400.00 |
| | | Process Service | $120.00 |
| | | | $520.00 |
| | **Grand Total:** | | **$520.00** |

# Time Sheet

02/01/2017

Castro, Juan vs. Sake Japanese and Thai Restaurant
Selected Timeslips
Status: Pending/Released/Transfered/Exception

| Date | Hrs | Timekeep | Amount |
|---|---|---|---|
| 09/22/2016 | .25 | AH | $62.50 |
| | | Telephone conference attempt with client. Spoke with friend/coworker at home phone number given. | |
| 09/23/2016 | .40 | RWM | $42.00 |
| | | Telephone conversation with client regarding case introduction, fact and witnesses. | |
| 09/28/2016 | .20 | RWM | $21.00 |
| | | Preparation of Introduction letter to Juan Castro | |
| 09/28/2016 | .20 | RWM | $21.00 |
| | | Preparation of Introduction letter to Jose Diaz | |
| 09/30/2016 | .40 | AH | $100.00 |
| | | Reviewed info gathering from telephone conference and researched defendant corporation. | |
| 09/30/2016 | .50 | AH | $125.00 |
| | | Prepared first demand letter and request for records. | |
| 10/17/2016 | 1.00 | AH | $250.00 |
| | | Prepared spreadsheet of damages based on averages. | |
| 10/18/2016 | .30 | RWM | $31.50 |
| | | Telephone conversation with client, Jose Diaz, regarding damages. | |
| 10/18/2016 | .30 | RWM | $31.50 |
| | | Telephone conversation with client, Juan Castro, regarding damages. | |
| 10/20/2016 | .20 | AH | $50.00 |
| | | Telephone call to Opposing Counsel regarding status. | |
| 10/25/2016 | .20 | AH | $50.00 |
| | | Prepared email to Opposing Counsel for status of settlement and records. | |
| 10/28/2016 | .20 | AH | $50.00 |
| | | Telephone conference with Opposing Counsel. | |
| 11/02/2016 | .20 | AH | $50.00 |
| | | Prepared email to Opposing Counsel. | |
| 11/09/2016 | .40 | RWM | $42.00 |
| | | Research on Corporate Defendant regarding FLSA coverage and Registered Agent | |
| 11/10/2016 | .20 | RWM | $21.00 |
| | | Preparation of letter to clients with Vertified Complaint | |
| 11/10/2016 | 1.50 | AH | $375.00 |
| | | Prepared complaint. | |
| 11/16/2016 | .60 | RWM | $63.00 |
| | | Telephone conversation with client, Jose Diaz regarding Verified Complaint. | |
| 11/16/2016 | .60 | RWM | $63.00 |
| | | Telephone conversation with client, Juan Castro, regarding Verified Complaint. | |
| 11/21/2016 | .40 | RWM | $42.00 |
| | | Preparation of filing Complaint pacakage incuding summons and civil cover sheet for filing | |
| 12/11/2016 | .60 | AH | $150.00 |
| | | Preparation of Statement of Claim. | |

# Time Sheet

## Castro, Juan vs. Sake Japanese and Thai Restaurant
### Selected Timeslips
Status: Pending/Released/Transfered/Exception

| Date | Hrs | Timekeep | Amount |
|---|---|---|---|
| 12/11/2016 | .30 | AH | $75.00 |
| | | Received and Reviewed Order Setting Status Conference and Mediation. | |
| 12/12/2016 | .20 | AH | $50.00 |
| | | Telephone conference with Opposing Counsel. | |
| 12/14/2016 | .40 | RWM | $42.00 |
| | | Preparation of Letter to Opposing Counsel regarding Waiver of Service and Notice of Selecting Mediator. | |
| 12/14/2016 | .40 | AH | $100.00 |
| | | Prepared Notice of Pendency. | |
| 12/14/2016 | .40 | AH | $100.00 |
| | | Prepared Certificate of Interested Parties. | |
| 12/15/2016 | .60 | AH | $150.00 |
| | | Prepared initial disclosures. | |
| 12/15/2016 | .40 | AH | $100.00 |
| | | Prepared notice of service of initial disclosures. | |
| 12/16/2016 | .40 | RWM | $42.00 |
| | | Preparation of Letter to Opposing Counsel with plaeadings including Notice of Pendency, Certificate of Interested Persons, Motion for Extension and Initial Disclosures | |
| 12/16/2016 | .60 | AH | $150.00 |
| | | Prepared Motion for Enlargment of Time to file Notice of Selection of Mediator. | |
| 12/29/2016 | .20 | AH | $50.00 |
| | | Telephone conference with client regarding case and settlement. | |
| 01/16/2017 | .30 | RWM | $0.00 |
| | | Mediation letter to client. | |
| 01/19/2017 | .20 | AH | $50.00 |
| | | Telephone conferences with client for settlement. | |
| 01/19/2017 | 1.00 | AH | $250.00 |
| | | Preparation of settlement agreement and motion to approve settlement. | |
| 01/20/2017 | .40 | AH | $100.00 |
| | | Telephone conference with Judicial Assistant to discuss settlement and pretrial conference mediation. | |
| 01/20/2017 | .40 | RWM | $42.00 |
| | | Preparation of Notice of Settlement | |
| 01/20/2017 | .20 | RWM | $21.00 |
| | | Preparation of Waiver of Conflicts for Plaintiffs | |
| 01/20/2017 | .20 | RWM | $21.00 |
| | | Preparation of W9 for Plaintiffs | |
| 01/20/2017 | .20 | RWM | $21.00 |
| | | Preparation of Cost Report and settlement paperwork for accounting | |

Total hours: 15.45      Total Amount: $3,004.50